UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO.: 2:24-cr-14-SPC-NPM

NICHOLAS P. SMITH
_____

# ORDER

Before the Court are Defendant's Motion to Suppress (Doc. 45) and the Government's Response (Doc. 50). On July 9, 2024, the Court held an evidentiary hearing on the motion, at which Defendant was present and represented by counsel. For the below reasons, the Court denies the motion.

On September 5, 2023, Officer Ryan Amador of the Fort Myers Police Department Group Violence Intervention Unit and his partner were patrolling Fort Myers in an unmarked vehicle. They observed a black Chevy Tahoe, which they believed had illegally tinted windows. Amador and his partner followed the vehicle.

The officers' body cameras captured the rest of the relevant events that day.[1] The officers pulled up directly behind the vehicle in the left turn lane at the Winkler Avenue and Fowler Street intersection. Amadore noted the back tires were at the crosswalk and stop bar. The vehicle inched into the crosswalk

---

[1] Several officers testified at the evidentiary hearing. The Court finds their testimony consistent with the body-camera footage.

at the intersection's blinking yellow light. The light displayed steady yellow, red, and then the vehicle turned left. After the vehicle turned on red, the officers immediately activated their siren and pulled it over. Other officers were immediately on the scene, including Sergeant Jari Sanders and his K-9.

Amador approached the vehicle on foot. Sanders stated, "I'll look for a [tint] meter," and Amador responded, "its alright, we've got red light." The Defendant was the driver and sole occupant of the vehicle, which turned out to be a rental. As Defendant provided his driver's license and rental agreement, Sanders tested the window tint. The tint meter registered a legal tint level. Sanders asked Defendant if he had a medical marijuana card, and he responded that he did not. Defendant then unbuckled his seatbelt, said "I'ma let y'all do y'all thing," and stepped out of the vehicle. Sanders told Defendant he appeared nervous. Defendant pointed back at the vehicle, stating again "go ahead, do your thing."

Sanders immediately had his K-9 perform an open-air sniff. Within seconds, the dog alerted on the vehicle, indicating it contained contraband. Sanders and another officer then searched the vehicle. As soon as Sanders opened the vehicle, he stated that he could smell burnt marijuana. And throughout the search, Sanders orally noted the smell of marijuana. Sanders observed that the vehicle was clean but found what he believed to be marijuana shake on the floorboard and driver's seat. During the evidentiary hearing,

2

Sanders testified and identified the location of some of the shake in a paused image from his body camera footage.

Given this evidence, Sanders approached Defendant and searched him. He felt a bulge in Defendant's shorts and discovered a bag containing fentanyl. The officers then cuffed and arrested Defendant. Defendant challenges: (1) the traffic stop, (2) the search of the vehicle, and (3) the search of his person.

The Fourth Amendment prohibits unreasonable searches and seizures:

> The right of the people to be secured in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This prohibition applies to the states through the Fourteenth Amendment. *Regalado v. Town of Trion*, No. 23-12258, 2024 WL 1111990, at *2 (11th Cir. Mar. 14, 2024).

First, Defendant challenges the traffic stop as unreasonable. "[S]topping an automobile and detaining its occupants constitute[s] a 'seizure' within the meaning of [the Fourth and Fourteenth Amendments.]" *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). But a traffic stop is a reasonable seizure, and thus constitutional, if it is based on probable cause that a traffic violation has occurred or is justified by reasonable suspicion under *Terry v. Ohio*, 392 U.S. 1 (1968). *See United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008).

3

Defendant's traffic stop was supported by probable cause that a traffic violation had occurred.  The officers stopped Defendant because they believed his vehicle had illegal window tint and he failed to properly stop at a red light.  The officers also testified that Defendant violated the law by stopping on a crosswalk.  The officers ultimately tested the window tint and determined that it was legal.  But because other traffic violations provided probable cause to stop Defendant, the Court need not determine whether a reasonable mistake about the tint could support the stop.

The Florida Uniform Traffic Control Law describes how drivers may proceed when faced with a flashing yellow, steady yellow, or steady red traffic light.  A "flashing yellow" light signals that "vehicles may proceed through the intersection or past such signal only with caution."  Fla. Stat. § 316.076(1)(b).  A "steady yellow indication" signals that "movement is being terminated or that a red indication will be exhibited immediately thereafter when vehicular traffic shall not enter the intersection."  Fla. Stat. § 316.075(1)(b).  And a "steady red indication" signals that traffic "shall stop before entering the crosswalk on the near side of the intersection . . . and shall remain standing until a green indication is shown[.]"  Fla. Stat. § 316.075(1)(c).  Similarly, Florida Statute § 316.1945 provides that "[e]xcept when necessary to avoid conflict with other traffic . . . no person shall . . . [s]top, stand, or park a vehicle . . . [w]ithin an intersection" or "[o]n a crosswalk."  Fla. Stat. § 316.1945(1)(a).

4

Defendant argues he followed the flashing yellow provision outlined above by cautiously proceeding into the intersection to turn left. But officer Amador's testimony and body-camera footage contradict this version of events. Amador testified that Defendant stopped on the crosswalk when the light was flashing yellow, then ran the light as it turned red. Although Amador's body-camera footage does not directly show the crosswalk (it is outside the frame) as Defendant proceeds through the red light, the footage corroborates his testimony. It shows Defendant's vehicle inching toward the intersection while the yellow arrow was blinking, stopping when the light turned steady yellow, and accelerating through the intersection when the light turned red. So it appears Defendant did not proceed through the intersection with caution during a flashing yellow light. Rather, he stopped on the crosswalk in violation of Florida Statute § 316.1945(1)(a) then proceeded through the intersection during a steady red light in violation of Florida Statute § 316.075(1)(c).

Defendant argues that, because he could not legally stop in the intersection or on the crosswalk and could not safely reverse, he had no choice but to go through the intersection. Although Defendant may have put himself between a rock and a hard place, his actions support probable cause to believe he violated the traffic laws.

Defendant also claims pretext. He makes much out of the fact that the officers involved may have been familiar with him before the stop. And he

5

questions why the Group Violence Intervention Unit is performing routine traffic stops with many officers and a K-9. But this is a non-issue. An officer's motive in making a traffic stop does not invalidate what is otherwise "objectively justifiable behavior under the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 812 (1996). Because the officers had probable cause that Defendant had committed multiple traffic violations, the traffic stop was a reasonable seizure consistent with the Fourth Amendment.

Second, Defendant challenges the search of the vehicle. Warrantless searches are per se unreasonable. And courts must suppress the fruits of unreasonable searches when the "deterrence benefits of suppression" outweigh the "substantial social costs generated by the rule." *Davis v. United States*, 564 U.S. 229, 237 (2011). But there are warrant exceptions. Under the automobile exception, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)).

The automobile exception and probable cause supported the search of Defendant's vehicle. Defendant does not, and cannot, challenge that his vehicle was readily mobile. Nor does Defendant challenge the reliability of the K-9's alert on the vehicle, and a "drug detection dog's alert can provide probable

cause to conduct a search." *United States v. Braddy*, 11 F.4th 1298, 1312 (11th Cir. 2021).

Nor can Defendant seriously claim that the officers unlawfully prolonged the traffic stop to allow the K-9 to sniff. The K-9 was present at the scene from the start of the traffic stop. The officers' mission to address the red-light violation was not yet complete when the K-9 sniff occurred. Nor had the time reasonably required to complete that mission passed—the stop had lasted a mere three and a half minutes when the K-9 began its open-air sniff. *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("[T]he tolerable duration" of a traffic stop is determined by the stop's "mission—to address the traffic violation that warranted the stop and attend to related safety concerns . . . Authority for the [stop] thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.") (internal citations omitted).

Finally, aside from probable cause, Defendant may have consented to the search of the vehicle. Defendant exited the vehicle, repeatedly told the officers variations of "do your thing," and then did not object as the officers searched the vehicle. For all of these reasons, the search of the vehicle was reasonable.

Third, Defendant challenges the search of his person. Another warrant exception relates to this search—search incident to arrest. Under that exception, an officer may "search individuals and personal items the individuals have on them when they are arrested and seize anything probative

7

of proving criminal conduct." *United States v. Ouedraogo*, 824 F. App'x 714, 720 (11th Cir. 2020). "Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification." *United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002). This is true even if the search precedes the arrest. *See United States v. Banshee*, 91 F.3d 99, 102 (11th Cir. 1996). And the "discovery during a search of a totally unrelated object which provides grounds for prosecution of a crime different than that which the accused was arrested for does not render the search invalid." *United States v. Gay*, 623 F.2d 673, 675 (10th Cir. 1980) (quotation omitted).

The officers had probable cause to search and arrest Defendant. Probable cause to search exists when, "under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found[.]" *United States v. Morley*, 99 F.4th 1328, 1337 (11th Cir. 2024) (citation omitted). Probable cause to arrest exists "if the totality of the circumstances could persuade a reasonable officer that there is a substantial chance of criminal activity by the person who is arrested." *Harris v. Hixon*, 102 F.4th 1120, 1126 (11th Cir. 2024) (citation omitted). The totality of the circumstances, including Defendant's behavior and the evidence of marijuana found in the vehicle, provided probable cause to both search and arrest Defendant.

Case 2:24-cr-00014-SPC-NPM   Document 55   Filed 07/23/24   Page 9 of 10 PageID 128

Defendant stated that he does not have a medical marijuana card. The officers observed that Defendant was acting nervous and was confrontational. Sanders believed Defendant intentionally tried to distance himself from the vehicle when he voluntarily got out and told them to "do their thing". The K-9 then alerted on the vehicle. And as soon as Sanders began to search the vehicle, he noted the smell of burnt marijuana. He repeatedly noted that he smelled marijuana, at one point stating that the car "reeked" of it. Sanders also testified that he found marijuana shake on the floorboard and driver's seat, where Defendant (the only occupant) was sitting. During the evidentiary hearing, Sanders identified the shake on the driver seat in his body-camera footage. Sanders did not identify the shake found on the floorboard. But the body-camera footage shows that Sanders and another officer found something on the floorboard seconds before he searched Defendant. Defendant also had a lighter in hand (although he was using it to light some legal substance during the stop). These factors, under a totality of the circumstances, provided probable cause to both search Defendant and arrest him for possession of marijuana.

Defendant argues that merely smelling marijuana in the vehicle does not provide a sufficient nexus to search Defendant. But the officers did not rely only on the smell of marijuana in the vehicle. Rather, they relied on Defendant's behavior, the K-9's alert, the smell of marijuana, and the

marijuana shake found where he was sitting. These factors in combination provided probable cause particularized to Defendant.

Last, Defendant argues that the search of his person was unreasonable because the officers searched his groin area in public following a mere traffic stop. This argument is baseless. Sanders quickly searched Defendant's shorts in a reasonable manner. The search took less than thirty seconds and Defendant was not unreasonably exposed to the public. Police officers routinely search arrestees in the manner that Sanders searched Defendant. *See Dix v. Bennett*, No. 3:21-CV-0040-TCB-RGV, 2021 WL 11709347, at *3 (N.D. Ga. Oct. 4, 2021), *report and recommendation adopted*, No. 3:21-CV-40-TCB, 2021 WL 11708255 (N.D. Ga. Oct. 25, 2021).

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Suppress (Doc. 45) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on July 23, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record